IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ELGIE McCLENDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:03-CV-0006 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff ELGIE McCLENDON brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE B. BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for Supplemental Security Income benefits (SSI). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff is not entitled to SSI benefits be AFFIRMED.

I.
THE RECORD

On May 25, 2001, plaintiff filed an application for Title XVI SSI benefits, alleging disability due to neck, high back, and hip pain, insulin-dependent diabetes, high blood pressure, and asthma. (Tr. 41-44; 50; 57). Plaintiff averred his conditions limited his ability to work because he had "trouble bending, stooping, and any type of body movement," had trouble getting his blood pressure

down, and that his diabetes would be "out of control at times." Plaintiff indicated his impairments began on April 7, 1987[1] and rendered him unable to work on July 20, 1998.[2] (Tr. 41, 50). Plaintiff avowed he had to stop working because he could not stand too long or bend, his job required too much standing and lifting, and he had a lot of pain in his neck and back. (Tr. 50). In an accompanying Pain Report, plaintiff described his neck and upper back pain as continuous "low" pain, explaining that at least once a day he has "bad" pain, and at least once a month he has "want to cry" pain, and that his pain was exacerbated if he stayed in one position for very long without shifting or moving around. (Tr. 72). Plaintiff advised that since May 22, 2001, he has taken Hydrocodone every 4-6 hours, and that it "always" eases the pain. Plaintiff indicated Tylenol and Naproxyn would "sometimes" ease the pain. Plaintiff stated the medications did not cause any side effects. (Tr. 73). Plaintiff described lower back pain as occurring once a day and lasting approximately one (1) hour, and that his pain was exacerbated if he stood or sat too long. (Tr. 74). Plaintiff advised that since May 22, 2001, he had taken Methocarbamol (a muscle relaxant) three times a day and that the medication "sometimes" relieved the pain without any side effects. (Tr. 75).

At the time he filed his application, plaintiff was 52-years-old, had obtained a GED degree, and had past work experience as a dishwasher/dietary aide (7-17-97 to 7-20-98), a porter/auto mechanic's helper (11-81 to 4-87), a grounds keeper (10-79 to 11-81), and a sanitation worker (1971 to 1977). (Tr. 41, 51, 56, 63-65, 227).

---

[1] Plaintiff had twice previously applied for disability and SSI, the first application being denied on September 16, 1992 and the second being denied on March 6, 1995. (Tr. 59; 226).

[2] SSA printouts indicated plaintiff had no FICA earnings for the years 1980, 1989 - 1996, or 1999-2002. FICA earnings reported for 1997 were $4,634.70, and for 1998 were $7,952.89. (Tr. 47-48).

The SSA denied plaintiff's application on initial determination.[3] After plaintiff requested reconsideration,[4] the SSA again denied plaintiff's application.[5] An administrative hearing was held before an Administrative Law Judge ("ALJ") on July 16, 2002. (Tr. 223-37). At the hearing, plaintiff, represented by counsel, testified he had "chronic neck pain," pain in his foot when he is standing a long time or walking, pain in his lower back, and pain between the shoulders. (Tr. 229). Plaintiff also testified he had surgery on his hand and that when he grips something, his hand cramps. (Tr. 230). Plaintiff also averred he could not lift heavy items due to his various pains. Plaintiff also referenced his asthma, noting he starts wheezing if he walks any distance, including

---

[3] On September 24, 2001, the Social Security Administration denied plaintiff benefits based on the state agency physician's primary diagnosis of plaintiff's condition as cervical fusion, C4-C7, and secondary diagnosis as diabetes mellitus. The SSA explained, "We have determined that your condition is not expected to remain severe enough for 12 months in a row to keep you from working. . . . You said you were disabled because of neck and upper back pain. This problem required surgery. Medical reports show some improvement has occurred. You also said you were disabled because of diabetes, high blood pressure and asthma. However your current symptoms are not severe enough to be considered disabling under Social Security guidelines. You have described various limitations caused by your symptoms and the evidence does show you have these limitations. Although you have alleged that disability began on 07/20/98, the medical evidence does not show that the condition was disabling until 05/22/01 when you had neck surgery. The medical evidence shows that although your neck impairment is currently severe, it is expected to respond to treatment and will not be disabling for 12 continuous months. The residuals will not prevent you from performing your previous job as a dietary aide as you described. (Tr. 21, 23-28).

[4] In his request for reconsideration, plaintiff stated he did not agree with the initial determination because:

"You said I'm not blind. I know lots of peoples that are not blind and still are getting SSI. People that stutter and some that haven't worked a day in their lives. I've had surgery on my hand and on my neck and hip. I can't see too good sometimes, I have to wear reading glasses to read. Surgery didn't help me at all. I'm still hurting." (Tr. 29).

[The Court notes plaintiff did not allege "blindness" as a basis for SSI, nor did the SSA's initial determination reference "blindness."] In his Reconsideration Disability Report, plaintiff averred the cervical surgery and follow-up therapy did not work, that he was still hurting, and that he also had a herniated disc in his back that would need surgery. (Tr. 81). Plaintiff also advised he was not so "bad off" that he could not bathe himself or put on his shoes, but that "lots of disabled peoples can still walk." Plaintiff explained he could not do the things he used to do and that his legs would sometimes be weak when he would walk a long way. (Tr. 83).

[5] On November 29, 2001, the SSA denied plaintiff benefits based on the state agency physician's primary diagnosis of spinal fusion C4-C7 and secondary diagnosis of diabetes mellitus. The SSA explained, "We have determined that your condition is not expected to remain severe enough for 12 months in a row to keep you from working. . . . You said you were disabled because of neck problems requiring fusion. Medical reports show that this condition should respond to treatment. You also said you were disabled because of low back problems, diabetes, asthma and high blood pressure. However, your current symptoms are not severe enough to be considered disabling under Social Security guidelines. Although you said you have these problems, the evidence does not show that your ability to perform basic work activities is as limited as you indicated. The medical evidence shows that although your neck is currently severe, it is expected to respond to treatment and will not be disabling for 12 continuous months. The residuals will not prevent you from performing your previous job as a dietary aides as it is generally performed. (Tr. 22, 31-33).

just around the house, and that he takes medication for his asthma. When asked about his neck surgery in 2001 and the amount of pain relief the surgery afforded, plaintiff testified he really did not see any "difference at all." (Tr. 231). Plaintiff testified he still had a lot of pain in his neck, which was exacerbated when he turned his neck. (Tr. 232). Plaintiff testified that with regard to chores, he is able to take out the trash, can sometimes go shopping, can help with the laundry, and can wash dishes but if he stands still too long his feet begin to hurt. (Tr. 232-33). The remainder of plaintiff's typical day involved plaintiff going to visit friends, or friends coming over to visit him, watching television, reading, and driving people around. (Tr. 79; 233). Plaintiff testified he can stand for approximately thirty (30) minutes at a time, sit for approximately fifteen (15) minutes at a time, and drive for about 17 miles at a time. Plaintiff testified he avoids stairs because of the fatigue of climbing, and that reaching up hurts him. (Tr. 235). Plaintiff testified he took medication for his pain but that the medications did not really help and caused him to be drowsy.

On September 23, 2002, the ALJ rendered a decision finding plaintiff not disabled. The ALJ found plaintiff has the following medically determinable impairments: (1) post-cervical fusion surgery involving C4 through C7, (2) asthma, and (3) diabetes. The ALJ found that although each of these conditions was medically determinable, only the post-cervical fusion condition constituted a "severe" impairment. The ALJ noted plaintiff suffered no functional limitations attributable to his diabetes when he was compliant with his prescribed treatment, and that plaintiff's asthma was controlled without medication. The ALJ determined that while plaintiff's cervical fusion impairment was severe, it was not severe enough to meet or medically equal one of the listed impairments. The ALJ further found plaintiff's subjective complaints and allegations regarding his functional limitations were not totally credible or reasonably supported by the objective medical

evidence. Specifically, the ALJ referenced the following in making this determination:

> In March 2001, [plaintiff] was found to have cervical spondylosis which was greatest at theC4-5, C5-6, and C6-7 levels. In May 2001, he underwent an anterior cervical discectomy and fusion procedures. He was placed in a cervical collar which was removed after six weeks. At that time [plaintiff] was described as doing well with a good upper extremity motor examination. X-rays done in August showed a solidly healed, surgically stabilized spinal fusion. [Plaintiff] showed good strength and no long tract findings. He only described some pain when lifting and tilting his head to the left. [Plaintiff] reported that physical therapy had reduced his cervical pain to a zero level most of the time and he was able to perform ninety percent of his activities of daily living.
>
> However, [plaintiff] testified at the hearing that his neck surgery did not help and that he experienced chronic neck pain. He said that he was forced to sit most of [the] time and had significantly diminished standing, walking, lifting, and postural abilities. [Plaintiff] also cited breathing problems after walking due to asthma. However, the objective medical evidence fails to corroborate [plaintiff's] assertions regarding his subjective complaints and functional limitations. Complaints regarding neck discomfort diminish after the summer of 2001. A January 2002 clinic note indicates [plaintiff] reporting having "a little pain sometimes from it. Takes Tylenol for pain." It was also reported that [plaintiff] walked everyday but reported that after an hour on his feet they started to hurt. I note that [plaintiff] was not checking his blood sugars regularly at this time. The medical record does not support the level of chronic pain and impoverished lifestyle that [plaintiff] described at the hearing.

The ALJ explained he thus gave controlling evidentiary weight to the determination of the state agency medical consultants.[6] The ALJ thus concluded plaintiff's upper extremity strength was intact and that whatever residual discomfort he experienced in his neck was generally mild in nature. The ALJ determined plaintiff retained the residual functional capacity (RFC) to perform work activity, *viz*, a full range of medium work, in that he could lift twenty-five pounds frequently

---

[6] A Residual Functional Capacity Assessment conducted September 21, 2001 resulted in the following findings:

Exertionally, plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and engage in unlimited pushing and/or pulling.2. Plaintiff was found to have no postural, manipulative, visual, communicative, or environmental limitations. The physician determined plaintiff's "alleged limitations caused by [plaintiff's] symptoms are not fully supported by the medical & other evidence." (Tr. 115- 22).

and fifty pounds occasionally, could be on his feet for six hours per day, and could engage in the other exertional and non-exertional requirements inherent in "medium" level work. As this level of restriction did not preclude the performance of plaintiff's past relevant work as a dietary aide as it was previously performed, the ALJ found plaintiff was not under a disability at any time through the date of the decision.

Upon the Appeals Council's denial of plaintiff's request for review on November 8, 2002, the ALJ's determination that plaintiff was not under a disability became the final administrative decision of the Commissioner. (Tr. 4-5). Plaintiff now seeks judicial review of the denial of SSI benefits pursuant to 42 U.S.C. § 405(g).

II.
ISSUE

Whether the Commissioner's decision that plaintiff is not disabled by pain is supported by substantial evidence.

III.
MERITS

Plaintiff argues the final administrative decision is not supported by substantial evidence. Specifically, plaintiff maintains his case "is based primarily upon severe and intractable pain, greatly aggravated upon any significant degree of physical exertion as would happen upon performance of substantial gainful activity." Plaintiff refers the Court to his testimony at the hearing during which he "described in great detail how he suffers severe pain upon any physical exertion." Plaintiff contends he has further "abundantly" proven he suffers from disabling pain because he has shown a clinical diagnosis of one or more conditions that might reasonably be expected to produce the severe and disabling degree of pain to which he attested. Plaintiff argues

the ALJ's characterization of his pain as "only mild," without citation to a concurring medical opinion or records, is not sufficient "to support such contempt for plaintiff's case." Plaintiff acknowledges the ALJ does refer to the findings of the state agency's Department of Disability Determination but argues those findings are also unsupported because they do not cite to any medical source findings or opinions that suggest plaintiff's impairments are not "quite severe." Plaintiff argues his treating physicians were "quite well impressed" with the severity of his pain "as witnessed by his referral to a pain clinic" on May 24, 2002. (Tr. 208). Plaintiff concludes there is no substantial evidence upon which to premise the finding by the ALJ that plaintiff is not disabled. Plaintiff requests the final adverse decision of the Commissioner be summarily reversed and the case remanded to the Administration for the sole purpose of calculating and paying benefits to plaintiff.

  The Commissioner, in replying to plaintiff's contention that the ALJ erred by not crediting plaintiff's subjective complaints of disabling pain, argues that in assessing pain as an allegedly disabling condition, a claimant's symptoms will be considered along with "the extent to which [these] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *See* 20 C.F.R. § 416.929(a). The Commissioner contends an ALJ is not compelled to accept allegations of disabling pain simply because a condition which "might" cause pain is demonstrated to be present. The Commissioner notes that pain constitutes a disabling condition only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." The Commissioner also argues that while an ALJ must consider a claimant's subjective complaints of pain, the ALJ is not required to credit such complaints, nor is he required to give subjective evidence precedence over medical evidence. The Commissioner maintains it is within the

discretion of the ALJ to determine the debilitating nature of allegations of pain, and those determinations are entitled to considerable deference by the courts.

The Commissioner argues that, here, the ALJ specifically discussed plaintiff's treatment following his May 2001 cervical discectomy and fusion. (Tr. 12). The Commissioner notes the ALJ found that at his August 2001 examination, plaintiff's x-rays "showed a solidly healed, surgically stabilized spinal fusion," and that plaintiff reported only that he had "some pain when he lifts up and tilts his head to the left." (Tr. 12, 94-95). The Commissioner also notes the ALJ also referenced plaintiff's physical therapy report of August 8, 2001 wherein plaintiff reported a "reduction in pain since initial eval[uation] to 0/10 most of the time" and reported an ability to perform 90% of activities of daily living. (Tr. 12, 132). The August 8, 2001 report also stated that plaintiff's physical therapy was discontinued because plaintiff had "met all stated goals." (Tr. 133). At the hearing, however, plaintiff testified that his surgery did not relieve his neck pain "at all." (Tr. 231). The Commissioner argues plaintiff's testimony cannot be reconciled with his own treatment reports and, thus, it was within the discretion of the ALJ to find plaintiff's allegations of disabling pain were inconsistent with the evidence of record. (Tr. 12-13).

Pain can constitute a disabling impairment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Pain is disabling when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990). The task of determining whether pain is disabling in nature falls, in the first instance, within the discretion of the ALJ. *Jones v. Heckler*, 702 F.2d 616, 621-22 (5th Cir. 1983). In determining whether pain is disabling, the ALJ has the primary responsibility for resolving conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). In making this determination, it is the province of the ALJ to judge the credibility of the claimant's subjective complaints. *Carrier v. Sullivan*, 944 F.2d

243, 247 (5th Cir. 1991). "[T]he law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints." *Falco*, 27 F.3d at 163. Here, the ALJ fulfilled his obligation by expressly rejecting plaintiff's contention that his subjective pain was of a disabling nature. Specifically, the ALJ found plaintiff's subjective complaints of debilitating pain were inconsistent with the medical evidence of record. The ALJ's determination is entitled to considerable deference. *See James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986).

Plaintiff claims he conclusively established he experiences constant, debilitating pain through his testimony and by establishing a diagnosis of a condition that might reasonably be expected to produce severe and disabling pain. The simple fact that plaintiff underwent a cervical discectomy, a surgical procedure to treat chronic neck pain, does not, in and of itself, conclusively establish that after a reasonable period of recovery, the procedure caused pain that is constant, unremitting, and wholly unresponsive to therapeutic treatment. The medical records contain no evidence of complications resulting from, or the ineffectiveness of, the procedure. In fact, medical records of July 3, 2001, two months after the procedure, showed satisfactory vertebral alignment. (Tr. 181). Records from August 27, 2001 showed normal postoperative x-ray appearance of a solidly healed surgically stabilized, anterior interdiscal spinal fusion from C4 through C7 level. (Tr. 179). Further, in the Pain Report plaintiff completed, he acknowledged "pain pills - heat pack - neck brace - tens unit (electrodes)" relieves any pain or makes it better. Plaintiff also indicated certain medication "always" eased the pain, that other medications "sometimes" relieved the pain, and that the medications did not cause any side effects. This pain report directly contradicts plaintiff's testimony that the medications did not really help and caused him to be drowsy.

On July 16, 2001, only two months after his surgery, plaintiff rated his pain in the cervical region as a 1 on a scale of 0 to10, and the pain in his upper extremity as a 6 on a scale of 0 to10

upon exercise. (Tr. 136). On July 25, 2001 and again on July 27, 2001, plaintiff rated his pain level as a 0 on a scale of 0 to10 after medication. (Tr. 138). On August 6, 2001, plaintiff reported he had been able to help his family more, and that he could not tell if he had spasms or increased pain with activities. Plaintiff again rated his pain level as a 0 on a scale of 0 to10 after medication. (Tr. 137). On August 8, 2001, plaintiff reported to his physical therapist that he had had a reduction in pain since his initial evaluation and rated his pain, most of the time, as a 1 on a 10-point scale. Plaintiff also reported an ability to perform 90% of his activities of daily living. The physical therapist determined plaintiff had met all of his stated goals. (Tr. 132-33). On August 24, 2001, plaintiff began reporting chronic neck pain since his surgery, and complained of tingling in his fingers and neck movement limited to flexion. (Tr. 127). On August 27, 2001, however, plaintiff reported "some pain when he lifts up and tilts his head to the left," but was found to have good strength and was sent to physiatry [sic] for judgment as to when he could return to work. (Tr. 94). On January 24, 2002, plaintiff reported that he had discontinued methocarbomal, and stated that he exercised daily by walking around the house, the block or the track at school. Plaintiff indicated, however, that if he was on his feet for more than one (1) hour, his feet would start to hurt. With regard to his neck, plaintiff indicated he sometimes had a "little pain" and would take Tylenol for the pain. (Tr. 221). On May 24, 2002, plaintiff again complained of chronic neck pain. (Tr. 209-10).

The ALJ found the medical record did not "support the level of chronic pain and impoverished lifestyle" plaintiff described at the hearing, and found plaintiff's pain does not rise to a level of severity to be disabling in and of itself. The administrative record provides enough support for the ALJ's finding. The medical record, despite plaintiff's referral to a pain clinic on May 22, 2002, does not conclusively establish that plaintiff's pain is disabling to the extent that the ALJ was compelled to make a finding of disability. While plaintiff challenges the ALJ's

determination and contends it is wrong, plaintiff has not shown the ALJ's exercise of discretion in this case was legally erroneous. It is well within the ALJ's discretion to make a credibility determination with respect to a plaintiff's claims regarding his complete inability to perform any work activity. *Anderson v. Shalala*, 51 F.3d at 779. The undersigned has reviewed the medical evidence, the testimony at the hearing, as well as the briefs submitted by the parties. The record evidence is sufficient, at least to the degree to meet the "substantial evidence" level, to support the ALJ's determination that plaintiff's pain is not disabling.

Plaintiff's ground of error is without merit.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner be AFFIRMED.

## V.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 30th day of December 2005.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).